# United States District Court
## for the
## Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 23, 2022

SEAN F. McAVOY, CLERK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) Case No. 4:22-MJ-07038-JPH |
| | ) |
| **HPM Corporation,** | ) |
| | ) |

## CRIMINAL COMPLAINT

I, Benjamin Wagar, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) April 6, 2021, in the county of Benton in the Eastern District of Washington, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 287 | False, Fictitious, or Fraudulent Claim |

This complaint is based on these facts:
See Attached Affidavit of Special Agent Benjamin Wagar.

☒ Continued on the attached sheet.

_____
**Benjamin A. Wagar**
Digitally signed by Benjamin A. Wagar
Date: 2022.03.23 15:33:24 -07'00'

*Complainant's signature*

*Benjamin Wagar, Special Agent*
_____
*Printed name and title*

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date: March 23, 2022

_____
*Judge's signature*

*James P. Hutton, United States Magistrate Judge*
_____
*Printed name and title*

City and state: Yakima, Washington

United States District Court
for the
Eastern District of Washington

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | )  Case No. 4:22-mj-07038-JPH |
| | ) |
| **HPM Corporation** | ) |
| | ) |

**CRIMINAL COMPLAINT AFFIDAVIT**

I, Benjamin Wagar, Special Agent with the Department of Energy, Office of Inspector General, being duly sworn, state as follows:

1. I am a Special Agent with the United States Department of Energy, Office of Inspector General (hereinafter referred to as DOE OIG) and have been so employed since September of 2018.

2. The DOE OIG is a Federal agency charged with investigating cases of fraud, waste, and abuse within the Department of Energy, its contractors, subcontractors, and grantees. My responsibilities include planning, conducting, and participating in criminal investigations involving individuals and corporations allegedly engaged in schemes to defraud the United States Government. Through these investigations, I have led or actively participated in cases involving contract fraud, grant fraud, procurement fraud, theft of government funds, embezzlement, bribery, identity theft, impersonation of government employees, theft of government equipment, and other forms of fraud. I am currently a sworn federal law enforcement officer.

Affidavit of SA Benjamin Wagar (22-mj-07038-JPH) - 1

3. I was previously employed as an Auditor with DOE OIG from June 2016 to September 2018. The DOE OIG Office of Audits is charged with conducting performance and financial audits for the Department's operations and programs, including those performed by contractors.

4. I have Bachelor of Arts Degrees in Law and Justice, Russian, and Political Science from Central Washington University, and a Bachelor of Science in Accounting from Western Governors University. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC), in Glynco, GA, where I received training in Criminal Law and Procedures. I am also a graduate of the Inspector General Investigator Training Program, at FLETC, where I received training specific to investigating crimes in the Inspector General community.

5. In my capacity as a Special Agent, I have assisted and participated in investigations regarding various federal crimes. I have reviewed and analyzed government contracts, grants, financial records, and evidence obtained from search and seizure warrants. I have conducted physical and wire surveillance and participated in consensual recordings. I have been the affiant on applications for search and seizure warrants, participated and directed other law enforcement officers in the execution of said warrants, and participated in arrests of individuals engaged in various crimes. As part of my duties as a Special Agent, I investigate criminal

violations and have statutory authority to execute warrants issued under the authority of the United States and make arrests.

6. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that HPM Corporation ("HPMC") has violated 18 U.S.C. § 287 (False, Fictitious, or Fraudulent Claims).

7. Specifically, I respectfully submit there is probable cause to believe that on or around April 6, 2021, HPMC, through representative Grover Cleveland Mooers, made a false claim on a PPP loan forgiveness application in violation of 18 U.S.C. § 287.

8. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents. Because this affidavit is limited in purpose, I am not including all facts known to law enforcement concerning this investigation. Instead, I have set forth only those facts that are necessary to establish probable cause for the complaint sought herein. In addition, where the contents of documents, or the action, statements, and conversations of others are reported herein, they are reported in sum and substance, and in part, except where otherwise indicated.

## STATEMENT OF FACTS IN SUPPORT OF PROBABLE CAUSE

### Relevant Entities, Individuals, and Contracts

9. Defendant HPMC is a Washington corporation with its principal place of business in Kennewick, Washington, specializing in occupational medicine.

10. Hollie P. Mooers ("Ms. Mooers") is the registered agent for HPMC, and both Ms. Mooers and Grover Cleveland Mooers ("Mr. Mooers") serve as HPMC's governors. Additionally, Ms. Mooers serves as President and Chief Executive Officer (CEO) of HPMC.

11. The United States Department of Energy ("DOE") oversees environmental remediation efforts at the Hanford Site in southeastern Washington State. In 2012, HPMC was awarded the Hanford Occupational Medicine Services prime contract to provide occupational medical and health services to workers at the Hanford Site, located in Southeastern Washington state. Most recently, in 2018, HPMC was competitively re-awarded the Hanford Occupational Medicine Services contract, under Department Contract No. 89303919DEM000005.

12. The United States Small Business Administration ("SBA") is a federal agency dedicated to small businesses that provides counseling, capital, and contracting expertise. Under the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, the SBA received authority to temporarily guarantee loans under a new 7(a) loan program.

## PAYCHECK PROTECTION PROGRAM BACKGROUND

13. The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was enacted on March 27, 2020, to provide over $2 trillion of economic relief to workers, families, small businesses, industry sectors, and other levels of government that have been hit hard by the public health crisis created by the Coronavirus (COVID-19). Among the provisions contained in the CARES Act are provisions authorizing the Small Business Administration (SBA) to temporarily guarantee loans under a new 7(a) loan program titled Paycheck Protection Program ("PPP").

14. This SBA-backed loan program was designed to help businesses keep their workforce employed during the COVID-19 crisis. Under the PPP, borrowers received loans to cover payroll costs and certain eligible nonpayroll costs. A borrower could apply for forgiveness once all loan proceeds for which the borrower was requesting forgiveness have been used. Borrowers could apply for forgiveness at any time up to the maturity date of the loan. If borrowers did not apply for forgiveness within 10 months after the last day of the covered period, then PPP loan payments were no longer deferred, and borrowers would begin making loan payments to their PPP lender. Loans guaranteed under the PPP were 100 percent guaranteed by SBA, and the full principal amount of the loans could in some circumstances qualify for loan forgiveness.

15. A company was eligible for a PPP loan if it has 500 or fewer employees whose principal place of residence is in the United States or was a business that operates in a certain industry and met the applicable SBA employee-based size standards for that industry, and was in operation on February 15, 2020.

16. In order to obtain a PPP loan, each applicant was required to provide information about the subject business's operations, such as the date of opening, number of employees, and past revenues. Each applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

17. Under the PPP loan program, the maximum loan amount is the lesser of $10 million or an amount calculated using a payroll-based formula specified in the Act. The entire loan amount may be forgiven. However, for 100% forgiveness, at least 60% of loan must be used on payroll costs, and the remaining 40% may be spent on interest on mortgages, rent, and utilities in the 24 weeks post loan disbursement.

18. The PPP loans were not directly distributed through the SBA. Rather, the SBA approved 7(a) lenders to make PPP loans on a delegated basis. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. The SBA maintained the power to exercise authority over PPP loan administration.

**The Investigation**

19. In August 2021, the DOE OIG received a complaint from a Department Official alleging that HPMC had applied for and received a PPP loan in the amount of $1,344,700, and subsequently had the total loan amount fraudulently forgiven. An investigation was initiated and revealed the following.

20. On April 3, 2020, HPMC, through Grover Cleveland Mooers, applied for a PPP loan through Community First Bank. This application was submitted through the SBA "E-Tran server," located in Sterling, VA.

21. On the Borrower Application Form, Mr. Mooers certified, on behalf HPMC, that the, "*current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant*" and that "*the funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.*"

22. This loan was approved and the SBA assigned PPP loan number "7352397001." Community First Bank handled this loan on a delegated basis from

Affidavit of SA Benjamin Wagar (22-mj-07038-JPH) - 7

the SBA. Community First Bank submitted disbursement details for this loan into the SBA E-Tran system located in Sterling, VA.

23. On April 17, 2020, a PPP loan of $1,344,700 was deposited into HPMC's Business Bank Account. After deposit of the PPP loan was made, the same day an inter-bank transfer of $1,344,700 was made from HPMC's Business Bank Account to HPMC's Business Premium Money Market Account. The sum of $1,344,700 remained in the money market account until July 1, 2021.

24. The coverage period of the loan, during which HPMC was required to use the funds for authorized purposes in order to receive forgiveness, was from April 17, 2020, through September 30, 2020. However, HPMC did not use the PPP loan proceeds to maintain payroll or for other covered business expenses during the loan coverage period, or at any point after.

25. On April 6, 2021, Mr. Mooers, on behalf of Ms. Mooers and HPMC, submitted a PPP Loan Forgiveness Application, Form 3508EZ, to the SBA through a SBA cloud-based platform (Summit) through the AWS GOVcloud server located in Oregon, as well as to Community First Bank.

26. On the loan forgiveness application, HPMC certified, through Mr. Mooers, that *"the dollar amount for which forgiveness is requested… was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business*

Affidavit of SA Benjamin Wagar (22-mj-07038-JPH) - 8

*utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures).*"

27. HPMC further certified, through Mr. Mooers, that "*[t]he Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.*"

28. HPMC also certified, through Mr. Mooers, that "*[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA guaranteed loan is punishable under the law....*"

29. HPMC also certified, through Mr. Mooers, that "*I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.*"

30. On April 13, 2021, based in part on the certification that the dollar amount for which forgiveness was being requested was used to pay business costs eligible for forgiveness such as payroll, SBA forgave HPMC's PPP loan of $1,358,184.35 principal of the loan ($1,344,700) plus the interest ($13,484.35) in full.

31. The SBA issued a "Notice of Paycheck Protection Program Forgiveness Payment," and on April 14, 2021, the forgiven amount of $1,358,184.35 was transmitted by the SBA from the Denver Finance Center in Denver, CO, and routed

through the Financial Management Service system located in Sterling, VA, before proceeding to Community First Bank in Kennewick, WA. The SBA also paid a lender fee to Community First Bank of $40,341.00.

32. On April 14, 2021, the SBA Denver Finance Center located in Denver, Colorado created and certified the payment file and transmitted the file to the U.S. Treasury data processing site in Kansas City, Missouri (KROC). KROC sent the file to the National Payment Center of Excellence (NPCE), also located in Kansas City, Missouri. The NPCE then sent the payment authorization to the Federal Reserve Bank (FRB) in East Rutherford, New Jersey. Finally, the FRB submitted an ACH payment to Community First Bank in Kennewick, Washington.

33. From the date of the loan application on April 3, 2020, to the date of the forgiveness application on April 6, 2021, the Department maintained payments to HPMC under the Contract No. 89303919DEM000005.

34. HPMC, through Mr. Mooers, certified to the SBA that the PPP Loan funds were used for authorized purposes and were thus eligible for forgiveness. This certification was knowingly false. This false certification was material.

35. On July 1, 2021, the sum of $1,344,700 was transferred from HPMC's Business Premium Money Market Account to Mr. and Ms. Mooers' personal Community Bank Checking Account.

36. A subsequent OIG audit identified that HPMC had obtained a PPP loan and OIG Audits contacted HPMC officials regarding the PPP loan. In a response questioning from OIG Audit, an HPMC official confirmed on August 2, 2021, that "*the loan was never used to cover any business operations to include payroll or other facility expenses*."

37. On September 14, 2021, HPMC officials represented that a third-party consultant, "Cornerstone Wealth Strategies," was used to distribute the PPP loan funds to various charities and that "*the charities were not handled through HPMC and were done as personal donations outside of HPMC. The full amount of the loan was sent to Cornerstone Wealth Strategies to disburse to the charities directly. As previously stated, at no time did HPMC use any of those funds to cover CARES Act 3610 related expenses*."

38. On November 4, 2021, HPMC Employee Number 1 for HPMC further confirmed to the affiant that HPMC applied for the PPP loan, the Department continued to pay for contract services HPMC performed through the coronavirus pandemic, the PPP loan proceeds were not used for payroll related expenses, the PPP loan sat in the bank account and was not used until July 2021 when the loan proceeds were transferred out of the HPMC bank account, and the PPP loan proceeds were donated to charity through personal contributions by the Mr. and Ms. Mooers and not HPMC.

Affidavit of SA Benjamin Wagar (22-mj-07038-JPH) - 11

39. On November 4, 2021, HPMC Employee Number 2 for HPMC also confirmed to the affiant that the PPP loan was not used for payroll related expenses, the Department continued to pay HPMC for contract services performed, and the PPP loan proceeds were donated to charity.

40. HPMC continued to receive full payment under their preexisting prime contract with the Department during the time in question. In fact, because HPMC is the on-site Occupational Health provider for the Department's Hanford Site, HPMC's business with the Department grew due to the coronavirus pandemic as they were awarded additional contract task orders related to coronavirus testing and vaccine administration.

41. HPMC, through Mr. Mooers, knowingly provided materially false statements to the SBA in support of HPMC's application for loan forgiveness. HPMC, through Mr. Mooers, falsely certified that the loan's proceeds were utilized for covered HPMC business-related expenses and that the loan was eligible for forgiveness when it was not.

42. These materially false representations made to the SBA caused the SBA to forgive the $1,358,184.35, principal of the loan ($1,344,700) plus the interest of 1% ($13,484.35) PPP loan in its entirety. Furthermore, upon forgiveness of the PPP loan, Mr. Mooers and Ms. Mooers transferred the sum value of the $1,344,700 PPP loan

into their personal checking account where they utilized the government funds for non-covered PPP loan related expenses.

## **CONCLUSION**

Based on the foregoing, there is probable cause to believe that HPMC engaged in a violation of criminal law, specifically one count of 18 U.S.C. § 287 (false, fictitious, or fraudulent claims).

Respectfully submitted,

**Benjamin A. Wagar**
Digitally signed by Benjamin A. Wagar
Date: 2022.03.23 15:33:41 -07'00'

_____
BENJAMIN WAGAR
SPECIAL AGENT
DEPARTMENT OF ENERGY
OFFICE OF INSPECTOR GENERAL

Subscribed Electronically and sworn to telephonically this  23  day of March, 2022.

_____
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE